IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, : | |
| Plaintiff, : | |
| v. : | Criminal Action No. 16-15-RGA |
| MALIK NASIR, : | |
| Defendant. : | |

MEMORANDUM ORDER

Malik Nasir began serving a term of three years supervised release on January 27, 2023. (D.I. 219 at 1; D.I. 223). This Court initially had jurisdiction. Jurisdiction was transferred to the District of Maryland on April 5, 2023. (D.I. 204). On January 10, 2024, Mr. Nasir filed a motion for early termination of supervised release. (D.I. 219). Jurisdiction was transferred back to this Court on April 26, 2024. (D.I. 223). The Government thereafter responded to the motion, and Mr. Nasir replied. (D.I. 226; D.I. 228).

The Court has the power to terminate supervised release early pursuant to 18 U.S.C. §3583(e)(1). I need to consider various factors set forth in the statute (which are repeated at D.I. 226 at 3), and may grant early termination "if satisfied that such action is warranted by the conduct of the defendant released and the interest of justice."

Most of the various factors set forth in the statute are unchanged since I imposed sentence on July 22, 2022. (D.I. 203). I thus repeat portions of what I said then.

> [I] begin with the sentencing guidelines, which I've determined to be 110 to 137 months.
>
> [T]here are a number of things I'm supposed to consider, Mr. Nasir, including the nature and circumstances of the offense. [T]he five firearms are what drive your

sentence, not really anything else. [T]he key facts are [that] you had a duffle bag in your car with five firearms consisting of an unloaded revolver, two loaded revolvers, and two loaded semi-automatic weapons, one of which was stolen[,] and 223 rounds of ammunition which, based on my review, appears as though all the ammunition would go with one or more of the various firearms. [Y]ou obstructed justice during the trial by trying to get another inmate to take the blame for the five firearms. So, that's serious. And because of your conviction, that's considered to be even more serious.

      I consider the need for adequate deterrence to you and to protect the public, which basically means, are you going to do this again when you're released or something like it? [O]n the negative side there, you have this conviction in 2007 for possession of a firearm by a felon. You served a pretty long sentence for that. You got out on supervised release and within days of the supervised release being over, you were arrested for this. [T]he evidence is that the sentence in 2007 didn't seem to have much deterrent effect on you. But I also take into account [that you have a] seven-year-old child that you've never seen, [and] your closest relative dying while you've been locked up. [Y]ou have taken some advantage of the opportunities that there are in prison with the programming, and you have at least discussed with [counsel] a plan relating to the CDL license. [P]eople get tired of doing long stretches in prison. [T]here is some evidence that people can age out of crime or criminal activity. I have considered [your] personal characteristics. I've seen the briefs that you wrote. They are, I think, the work of an intelligent man. I noticed, unlike a lot of people who come before me and have a lengthy criminal record, yours didn't start until you were an adult. You have no juvenile record. That's kind of unusual. I saw that you have a pretty respectable work history in the sense that you had two jobs for two months in 2003 and 2004. You worked six months at Capital Linens in 2013. That was followed by nine months at the Perdue factory. There was nine months at Procter & Gamble. You were attending some college and collected unemployment because you were laid off. And then you were working at Tropical Delights before you were arrested for this. I've always thought that people who have jobs and work at them for some period of time, that shows something positive about them. I think that is a promising characteristic for you. It makes me think that if you got your CDL license, you could do that. That's hard work. One of the things that I went back over was these convictions that predated the Virginia conviction. You have ten separate State Court criminal convictions between 1999 and 2007, a long time ago. You were a young man then, but you had ten separate State Court criminal convictions. None of them involved violence. And the imprisonment sentence[s] for those ten convictions were two weeks, 30 days, 20 days, 30 days, 14 months, none, time served, [two days], 18 months and four months. As far as I could tell, three of the ten cases were felonies, including the two cocaine offenses that have been such a point of dispute in your case here. [T]hen in 2007, you've got this major federal conviction and a sentence of 84 months imprisonment, which you did, and then you did the supervised release with nothing that got you revoked. [I]t's 50-50 after you spend seven years in prison whether you can do three years of supervised release without getting revoked. [T]he point is that, in fact, a lot of the criminal history you have, they're essentially possession of marijuana. They're very minor kinds of offenses. [T]hey're offenses, but up until these two gun cases, there was nothing that looked to me [to be particularly serious]. [E]ven the drug cases that you did get convicted of, I think one of

them was you were selling $10 worth of cocaine. You really weren't, in my opinion, much of a threat to society, notwithstanding the fact that you were regularly being [convicted]. I think, all things considered, when considering all those things together, that the sentence that's necessary is less than what the Government is asking for.

[Y]ou were convicted in Virginia for an offense involving one gun. It's hard to give you the same sentence for an offense involving five guns because the general theory is that you do the same thing over again, there ought to be an incremental increase in the punishment aspect. [A]ll things considered, the guidelines have gotten to a higher point than really reflects the crime and the record that you have. I would say that notwithstanding the possibility that a person who has a number of guns is going to have those guns get in the wrong hands, that I just don't see you with any history of violence at all, and I think that ought to be rewarded.

(D.I. 203 at 23-28) (substantially edited).

I consider "pertinent policy statements,"[1] "unwarranted sentencing disparities," and the "need to provide restitution." If Mr. Nasir's supervised release were to be terminated, it would mean that he would be on supervised release for less time than is usual for people convicted of repeat gun offenses. There is no restitution, although there is $75 owed on his special assessments.[2]

Mr. Nasir relies upon the "Guide to Judiciary Policy." (D.I. 219 at 1-2). While the factors set forth there generally seem appropriate to consider, they are not required by law.

Mr. Nasir's early termination is opposed by the U.S. Probation Office and the United States Attorney. Mr. Nasir says he is reintegrated into the community, his family, and is a "valued worker." (D.I. 219 at 3). Mr. Nasir later says he "has formulated his own company." (D.I. 228 at 1). It appears to be a "luxury car rental company." (*Id.* at 2). He says that he worked "two jobs for seven months from March 2023 to October 2023." (*Id.* at 1). One of them

---

[1] I think the pertinent policy statement is Application Note 5 to § 5D1.2.
[2] There were $300 of Special Assessments. While Mr. Nasir was incarcerated, $225 was paid toward the total. The last payment was on April 1, 2021. He has paid nothing since starting his supervised release term.

was at "Plastor Pack Warehouse." For at least part of the time, the other was "Pat's Pizza." It appears that he was then unemployed for seven months. (*Id.*).

The Probation Office has pointed out the Mr. Nasir has not paid $75 of this $300 special assessments. He is unemployed and his residences have been, at least at times, unstable. The Maryland U.S. Probation Office recommended mental health treatment and drug treatment. Mr. Nasir declined these recommendations.

The repeated gun offenses give serious cause for concern, and Mr. Nasir's attempt to demonstrate why his supervised release should be terminated early falls short of convincing me that it is in the interest of justice to do so. *See generally United States v. Melvin*, 978 F.3d 49 (3d Cir. 2020).

The motion for early termination of supervised release (D.I. 219) is DENIED.

IT IS SO ORDERED this 1st day of July 2024.

United States District Judge