IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE


MALIK NASIR,                                :
                                            :
        Movant/Defendant,                   :
                                            :
        v.                                  :        Crim. Act. No. 16-15-RGA
                                            :        Civ. Act. No. 23-664-RGA
                                            :
UNITED STATES OF AMERICA,                   :
                                            :
        Respondent/Plaintiff.               :

_____

Malik Nasir. *Pro se* Petitioner.

Claudia L. Pare, Assistant United States Attorney, United States Department of Justice,
Wilmington, Delaware.  Attorney for Respondent.

_____


**MEMORANDUM OPINION**


August 23, 2024
Wilmington, Delaware

ANDREWS, UNITED STATES DISTRICT JUDGE:

Before the Court is Movant Malik Nasir's *pro se* Motion to Vacate, Set Aside, or Correct

Sentence Pursuant to 28 U.S.C. § 2255.  (D.I. 208; D.I. 208-1)  The Government filed an Answer

in Opposition, to which Movant filed a Reply.  (D.I. 216; D.I. 218)  For the reasons that follow,

the Court will deny Movant's § 2255 Motion as meritless.

I.      INTRODUCTION

On December 21, 2015, the owner of a storage facility in Dover,
Delaware ["Liberto"] reported to the police suspicious activity at
one of the storage units, number C69.  [Liberto] asked the police to
visit the storage facility to discuss what he believed to be "drug
occurrences" on his property.  When the police arrived, he told them
that, over the past several months, someone had visited that unit
frequently, as often as five times a day.  Each time, the man – whom
he identified as [Movant] – would enter the storage unit and close
the door behind him.  Shortly thereafter, he would reemerge and
leave the facility.  Concerned about illegal activity, [Liberto] had
taken a photograph of the inside of the unit, which he showed the
officers.  It revealed two large coolers, two closed buckets, a box of
baggies, a large bag, and an aerosol spray can.  [Liberto] provided a
copy of a rental agreement signed by [Movant] and a photocopy of
[Movant's] driver's license.  The rental agreement listed [Movant's]
storage unit as C43, not C69, but the police apparently did not notice
that discrepancy.

Following up on the information provided by [Liberto], the police
ran a criminal history check on [Movant] and learned that he had a
criminal record that included felony drug convictions.  They visited
unit C69 with a drug detection dog, and the dog positively alerted to
the presence of drugs there.  Based on the accumulated evidence, the
detectives applied for a search warrant for that unit.

While awaiting the warrant, several police officers remained at the
storage unit, and one surveilled [Movant's] home.  The officer at the
home saw [Movant] place a large black bag in the back of a Mercury
Mariner SUV and drive in the direction of the storage facility.
[Movant] in fact went to the facility, and, when he arrived, the
officers stopped him as he entered the row of units including
numbers C69 and C43.  After handcuffing him and putting him in
the back of a patrol car, they searched his SUV, where they found a
black duffle bag and a key to unit C69.

> That same night, a search warrant issued and was executed.  In unit C69, the police found more than three kilograms of marijuana, as well as scales and packaging materials. The next day, they applied for and received a search warrant for [Movant's] home and any vehicles on the property.  While executing the warrant, the officers found $5,000 in cash in a grocery bag in the house and several handguns with ammunition in a Dodge Charger parked on the property.
>
> [Movant] was indicted for violating 21 U.S.C.§ 856(a)(1), part of what is commonly known as the crack house statute (Count One), and was also charged under 21 U.S.C. §§ 841(a)(1) and (b)(1)(D) for possession of marijuana with intent to distribute (Count Two), and under 18 U.S.C. §§ 922(g)(1) and 924(a)(2) as a felon in possession of a firearm (Count Three).  He moved to suppress the evidence obtained from the searches of the storage unit, his house, and his vehicles. The District Court held hearings on that motion and denied it.  Later, at trial, the jury convicted him on all three counts of the indictment.

*United States v. Nasir*, 17 F.4th 459, 463-64 (3d Cir. 2021).

On August 24, 2018, the then-presiding judge sentenced Movant to 210 months of imprisonment and three years of supervised release.  (D.I. 148)  That sentence was based, in part, on the Court classifying Movant as a career offender under the United States Sentencing Guidelines based on two prior convictions in Virginia – one for attempted possession of cocaine with intent to distribute and another for possession of cocaine and marijuana  with intent to distribute.  (*Id.*; D.I. 163 at 22-24)

Represented by new counsel, Movant appealed his conviction and sentence.  The Court of Appeals affirmed Movant's convictions under the crack house statute and for possession with intent to distribute marijuana.  The Court vacated his § 922(g)(1) conviction in light of *Rehaif v. United States*, 588 U.S. 225 (2019), and remanded for a new trial on that charge.  The Third Circuit also remanded the case for resentencing after holding the sentencing was based on the

improper application of the career offender enhancement. *See United States v. Nasir*, 982 F.3d

144, 151-52 177 (3d Cir. 2020). The Government petitioned for a writ of certiorari. The

Supreme Court granted the petition and vacated and remanded. *See United States v. Nasir*, 142

S. Ct. 56 (2021). On November 8, 2021, upon remand, the Third Circuit affirmed all three of

Movant's convictions, vacated his sentence, and remanded the case for resentencing. *See*

*generally Nasir*, 17 F.4th 459.

On March 4, 2022, the case was reassigned to me. On July 22, 2022, I resentenced

Movant to 100 months of imprisonment and three years of supervised release. (D.I. 200)

Movant timely filed the instant § 2255 Motion on June 16, 2023. (D.I. 208)

## II.   DISCUSSION

Movant's § 2255 Motion asserts the following seven[1] ineffective assistance of trial

counsel claims ("IATC"): (1) trial counsel provided ineffective assistance by failing to compel

the admission of the key to storage unit C69 (D.I. 208-1 at 6-7); (2) trial counsel should have

asked the Court to provide an adverse inference jury instruction concerning the Government's

failure to introduce into evidence the key to storage unit C69 (*id*. at 4-5); (3) trial counsel failed

to preclude Liberto's testimony from being admitted or limit Liberto's testimony to his

"firsthand knowledge" (*id*. at 6), and trial counsel failed to object to Liberto's testimony that

Movant was "in good standing with payment" for the storage unit (*id*. at 5); (4) trial counsel

should have presented an argument based on the discrepancy between the storage unit number on

the lease and the number of the storage unit in which the drugs were found (*id*. at 7); (5) trial

---

[1]The § 2255 Motion actually asserts a total of eight Claims. (D.I. 208-1) For ease of analysis, but without changing the underlying substantive arguments, the Court has combined two interrelated Claims (Sub-arguments (b) and (e ) in D.I. 208-1) and has presented the Claims in a different order from Movant's presentation.

3

counsel provided ineffective assistance by failing to argue that no forensic evidence was recovered from the firearms or the items recovered from Unit C69 (*id*. at 7); (6) trial counsel provided ineffective assistance by failing to request to sever the § 922(g)(1) count or to request a bifurcated trial as to the § 922(g)(1) count (*id*. at 5-6); and (7) trial counsel should have challenged the reliability of the canine and canine's handler and also should have requested a hearing to determine the reliability of the canine sniff alert (*id*. at 6).

Movant has properly raised his ineffective assistance of counsel allegations in a § 2255 motion. *See Massaro v. United States,* 538 U.S. 500 (2003). As a general rule, ineffective assistance of counsel claims are reviewed pursuant to the two-pronged standard established in *Strickland v. Washington,* 466 U.S. 668 (1984). Under the first ("performance") prong of the *Strickland* standard, a movant must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Id*. at 688. Under the second ("prejudice") prong of the *Strickland* standard, a movant must demonstrate a reasonable probability that, but for counsel's error, the outcome of the proceeding would have been different. *See id*. at 694; *United States v. Nahodil*, 36 F.3d 323, 326 (3d Cir. 1994).

A court can choose to address the prejudice prong before the deficient performance prong, and reject an ineffective assistance of counsel claim solely on the ground that the movant was not prejudiced. *See Strickland,* 466 U.S. at 698. Although not insurmountable, the *Strickland* standard is highly demanding and leads to a strong presumption that counsel's representation was professionally reasonable. *Id*. at 689.

4

A. **Claim One: Trial Counsel Failed to Compel the Admission of the Key to Storage Unit C69**

During Movant's trial, the Government introduced the lease agreement and a transfer receipt indicating that Movant had moved from Unit C43 to Unit C69 to prove Movant was leasing Unit C69 at the time of the incident. (D.I. 95 at 154-161) Sergeant Skinner testified that, when searching Movant's Mercury Mariner, he found a single key in the vehicle's cup holder, and that he used that same key to unlock Unit C69. (D.I. 95 at 182) Review of the trial transcript shows that the physical key from Movant's vehicle was not admitted into evidence. Yet, the Government's Exhibit List recites Exhibit No. 15 as "Key and Lock to storage unit." (D.I. 211 at 1 (which follows D.I. 83 on the docket)) It appears that the Government either intentionally or accidentally did not seek to admit the key.[2]

In Claim One, Movant asserts that trial counsel should have compelled the Government to introduce into evidence the physical key to storage Unit C69. (D.I. 208-1 at 6-7) In his Reply, Movant contends that the Government "was allowed to introduce imaginary evidence into the record (the key) that they obviously didn't have and without that testimony, there is a very real chance that [Movant] would have been acquitted at trial." (D.I. 218 at 1)

To the extent Movant assumes no one could testify about the key if it was not introduced into evidence, (D.I. 208-1 at 7), he is mistaken. To the extent Movant's reference to an "imaginary key" implicitly asserts trial counsel should have argued the key did not exist, there is no evidence that the key did not exist. Trial counsel merely had a different plan, and counsel's failure to compel the production of the key does not satisfy either prong of the *Strickland*

---

[2]The evidence that Movant had access to the storage unit was overwhelming. He was the lessee of the unit, he was seen there regularly, and he drove over to the unit on the day of his arrest.

standard.  As Movant himself alleges, the key found in his car "essentially cinched" the connection between him and Unit C69, demonstrating that trial counsel could very reasonably have determined that it was not in Movant's best interest to seek admission of the key because it would have inculpated him further.  And, while trial counsel did not seek to admit the key, trial counsel highlighted questions about the evidentiary value of the key through cross-examination and closing argument.  For instance, on cross-examination, trial counsel asked Sgt. Skinner: (1) to describe the key; (2) whether he (Skinner) was the individual who saw the key in the console and took it out of the car to open the storage unit with it; (3) whether the key was kept in evidence; and (4) whether the key had a "do not duplicate" statement on it.  (D.I. 95 at 204-05) Sgt. Skinner responded that: (1) the padlock was "like a gold color" and the key was "brown;" (2) he was the person who took the key out of the car and opened the unit with it; (3) the key was kept in evidence; and (4) he did not know if there was a "do not duplicate" statement on the key. (D.I. 95 at 205)  Then, during closing argument, trial counsel asserted that the Government failed to demonstrate Movant knowingly possessed the marijuana that was found in the storage unit because: (1) they did not wait to see Movant open the unit and go inside of it; and (2) there could have been duplicate keys to the storage unit and other individuals "sharing this locker unit that put the stuff in the locker unit."  (D.I. 96 at 119-20)

To the extent trial counsel determined it was best to raise questions about the evidentiary value of the key via cross-examination and closing rather than underscore Movant's culpability by admitting the physical key into evidence, it is the type of strategic decision that does not constitute deficient performance under the first prong of the *Strickland* standard.  *See Strickland*, 466 U.S. at 691.  Movant also cannot demonstrate that he was prejudiced by the failure to introduce the physical key into evidence, because admitting the key would have supplemented

6

the already-existing proof of the connection between Movant and the C69 storage unit.[3]

Based on the foregoing, the Court will deny Claim One as meritless.

### B.  Claim Two:  Trial Counsel Failed to Request an Adverse Inference Instruction

In Claim Two, Movant contends trial counsel should have requested an instruction permitting the jury to make an adverse inference from the fact that the Government did not introduce into evidence the key for Unit C69.  According to Movant, "there is a reasonable [p]robability at least one juror would have found reasonable doubt that [Movant] had access to the marijuana" if the adverse inference instruction had been given.  (D.I. 208-1 at 5)

An adverse inference instruction is given as a sanction for spoilation of evidence, and is only warranted when: (1) the evidence in question was within the party's control; (2) there has been actual suppression or withholding of the evidence; (3) the evidence in question was relevant to claims or defenses; and (4) it was reasonably foreseeable that the evidence would later be discoverable.  *See Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 334 (3d Cir. 1995); *Fatir v. Taylor*, 2015 WL 4116711, at *1 n.1 (D. Del. July 6, 2015).  The record in this case does not indicate that the Government suppressed or destroyed the key.  That the Government did not seek to introduce the key into evidence does not suggest the key was lost or destroyed.  "[T]here was neither loss or destruction of evidence by the Government, nor evidence of any bad faith on the part of the Government, which would entitle the defendant to an adverse inference

---

[3]Given Movant's statement that the key was "imaginary," the Court acknowledges Movant may be arguing that trial counsel was ineffective for not moving to admit the key into evidence because Movant believes such a motion would have revealed that that the police fabricated the existence of the key.  This argument is unavailing.  First, there simply is no evidence of such misbehavior.  And second, as already discussed, counsel highlighted issues surrounding the evidentiary value of the police finding the key to Unit C69 in Movant's vehicle through cross-examination and closing argument.

instruction." *United Sates v. Fleming*, 818 F. Supp 845, 852 (E.D. Pa. 1993). Movant also has

not demonstrated, and the record does not reflect, that the Government's decision not to

introduce the physical key in this case was due to any sort of fraud or desire to frustrate the

defense. *See United States v. Atkinson*, 316 F. App'x 93, 94 (3d Cir. 2008) ("Here, the record is

devoid of any evidence that the prosecution . . . withheld [the surveillance tape] to frustrate the

defense."). Given these circumstances, Movant has not established he was entitled to an adverse

inference instruction.

Because there was no basis for trial counsel to request an adverse inference instruction,

trial counsel's failure to do so does not amount to constitutionally ineffective assistance. *See*

*United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999) ("There can be no Sixth Amendment

deprivation of effective counsel based on an attorney's failure to raise a meritless argument.").

Accordingly, the Court will deny Claim Two as meritless.

### C. Claim Three: Trial Counsel Failed to Preclude or Limit Liberto's Testimony and Failed to Object to Liberto's Testimony Regarding Movant's Payment Standing

In Claim Three, Movant asserts that trial counsel was ineffective for: (1) failing to

preclude Liberto's testimony from being admitted or limit Liberto's testimony to his "firsthand

[k]nowledge" (D.I. 208-1 at 6); and (2) failing to object to Liberto's testimony that Movant was

"in good standing with payment" for the storage unit (D.I. 208-1 at 5) According to Movant,

trial counsel should have objected to Liberto's testimony on the grounds that: (1) Liberto never

saw Movant before the night of his arrest; (2) Liberto did not fill out the rental agreement with

Movant; (3) Liberto did not have firsthand knowledge that Movant was in any of the cars he

testified visited Unit C69 on the day of the arrest; and (4) Liberto did not testify that he regularly

kept up to date on customer payment standing (D.I. 208-1 at 5-6)

Movant has failed to demonstrate that trial counsel's actions constituted deficient performance under the first prong of the *Strickland* standard.  For instance, Movant does not identify any reason that Liberto – the owner and manager of the storage facility whose call to law enforcement reporting suspicious active in one of the storage units triggered the investigation into Movant – should not have been permitted to testify under the Federal Rules of Evidence. Liberto's testimony was relevant to the case, and there was no basis upon which to exclude Liberto from testifying.  Second, contrary to Movant's assertion, trial counsel made numerous objections to aspects of Liberto's testimony, some of which were sustained and some of which were overruled.  For instance, trial counsel objected to Liberto's testimony concerning the rental agreement on lack of foundation, hearsay, and lack of authenticity.  (D.I. 95 at 155-162)  These objections forced the Government to ask additional questions of Liberto in order to lay the proper foundation and establish that the documents were sufficiently authenticated such that they were admissible under the business records exception to the hearsay rule.  (*Id.*)  Indeed, despite his instant argument, Movant himself appears to recognize that the Government laid the foundation for admitting the lease agreement under the business records exception.  (*See* D.I. 208-1 at 5, stating "according to the lease agreement [for] which the government had laid the foundation for the business records exception.")  And, while trial counsel did not explicitly object to Liberto's testimony about Movant's numerous trips to Unit C69 on the day of his arrest on the basis that Liberto lacked "firsthand knowledge" that Movant was in any of those cars, trial counsel objected that Liberto's testimony constituted hearsay.  (D.I. 95 at 165-167)  The trial court, however, overruled the objection.

As for Movant's contention that trial counsel did not object to Liberto's testimony that Movant was "in good standing with payment" on the ground that the Government did not lay the

9

proper foundation, the trial transcript reveals that an objection was unnecessary because a proper foundation had already been laid.  Earlier, Liberto testified that he "r[a]n and manage[d] the facility," worked five to seven days a week at the facility, worked at the desk, worked on the grounds, and "over[saw] everything." (D.I. 95 at 150-151)

In sum, neither trial counsel's failure to raise baseless objections to Liberto's testimony, nor the fact that the Court overruled some of trial counsel's objections to Liberto's testimony, demonstrate that trial counsel performed deficiently.

Additionally, the transcript reveals that trial counsel used Liberto's testimony strategically in closing to advance the argument that the Government had not met its burden of proof.  A main theme in trial counsel's closing was that no one "actually s[aw] [Movant] in possession of either the handguns or the drugs."  (D.I. 96 at 366)  Trial counsel referenced Liberto's testimony to further that argument, stating,

> In fact, no one came in here to testify and tell you that yes, we saw [Movant] put those coolers of marijuana into the storage facility.  In fact, as you will recall, Mr. Liberto, while he is the owner of the facility, indicated that he had never met [Movant].  He had never interacted with [Movant].  In other words, he had never seen [Movant] put these things into the storage facility.  And also, importantly, you will remember that Mr. Liberto indicated there was activity around the storage facility, and, in fact, there was a red Mustang that had pulled up.  He seemed to recall a red Mustang pulling up at or near this storage facility, and that was important to him.  But there is no evidence in this case that [Movant] possessed or owned a red Mustang.  And so that can lead you to the conclusion that perhaps somebody else was involved with putting this stuff into the storage cooler. – I mean to the storage locker because, again, there is no direct evidence.  No one is seeing [Movant] involved with that particular activity.

(*Id.* at 366-367)  Thus, even though trial counsel's objections to certain aspects of Liberato's testimony were overruled, trial counsel used the information that was admitted via Liberto's

10

testimony to demonstrate weaknesses in the Government's case.  Under these circumstances,

Movant has failed to show that trial counsel's performance in objecting to and challenging

Liberto's testimony fell below an objective standard of reasonableness.

Movant has also failed to satisfy the prejudice prong of the *Strickland* standard.  As just

explained, trial counsel objected to Liberto's testimony on several different grounds, and the

Court overruled some of those objections.  Movant has not shown that any other objections he

would have had counsel make would have been meritorious.  Consequently, Movant has failed to

demonstrate a reasonably probability that the outcome of his trial would have been different but

for trial counsel's failure to make those objections.

Accordingly, the Court will deny Claim Three as meritless.

### D.  Claim Four: Trial Counsel Failed to Present an Argument About Discrepancy Between the Storage Unit Identified in Rental Agreement and the Storage Unit that was Searched

Next, Movant contends that trial counsel was ineffective for failing to argue that the

discrepancy between the number for the storage unit identified in the lease – Unit C43 – and the

number for the storage unit identified by Liberto and searched by the police – Unit C69 –

demonstrated, "at the very least, sloppy, unreliable paperwork." (D.I. 208-1 at 7)  According to

Movant, trial counsel could have used the so-called sloppiness and unreliability of the lease

agreement to "perhaps raise[] reasonable doubt in the minds of the jurors as to whether [Movant]

actually was the person leasing C69." (*Id.*)

Movant's argument fails to establish that trial counsel's performance with respect to the

storage unit number discrepancy was deficient under the first prong of the *Strickland* standard.

Notably, trial counsel used the storage unit number discrepancy as a basis for a suppression

motion and a motion for a *Franks* hearing (D.I. 28; D.I. 35; D.I. 51 at 11), both of which the

11

Court denied (D.I. 46 at 4; D.I. 55 at 6-7).  At Movant's trial, Liberto testified that Movant

originally rented Unit C43, but transferred units a few weeks later and began renting Unit C69.

(D.I. 95 at 154, 160-163, 171)  Liberto's testimony regarding Movant's changing storage units

was supported by documentation—Exhibit 3—that the Court admitted into evidence.[4]

Consequently, during the trial, trial counsel reasonably refrained from attempting to raise doubts

by arguing about "sloppy, unreliable paperwork."  Instead, trial counsel used his closing

argument to focus on what the Government had failed to prove.  (D.I. 96 at 117).  For instance,

trial counsel pointed out that: (1) Liberto never met or interacted with Movant and never saw

Movant put anything in the unit (*id.* at 118); and (2) the Government did not introduce any

forensic evidence linking Movant to the items found in the storage unit or to the handguns found

in the trunk of his car that was parked in front of his house in Dover (*id.* at 121-122).  Trial

counsel also highlighted the fact that: (1) the Government's case was entirely circumstantial (*id.*

at 118, 120-122); (2) there was a possibility that there were duplicate keys to Unit C69 and a

possibility that other people were using the storage unit and placed the items inside it (*id.* at 120,

122); and (3) other individuals could have been responsible for placing the handguns in the trunk

of Movant's car (*id.* at 119, 122).

"[C]ounsel has wide latitude in deciding how best to represent a client, and deference to

counsel's tactical decisions in his closing presentation is particularly important because of the

broad range of legitimate defense strategy at that stage. […] Judicial review of a defense

attorney's summation is therefore highly deferential[.]" *Yarborough v. Gentry,* 540 U.S. 1, 5-6

(2003).  Based on the foregoing, the Court concludes that trial counsel reasonably refrained from

---

[4] The Court had previously denied a related suppression motion.  (D.I. 55).

pursuing a baseless argument about "sloppy, unreliable paperwork" and, instead, strategically focused the jury's attention on the circumstantial nature of the Government's case.

Movant's contention that an argument based on "sloppy, unreliable paperwork" "could have [p]erhaps raised reasonable doubts in the minds of the jurors as to whether [Movant] actually was the [p]erson leasing C69" also fails to establish prejudice under *Strickland*'s second prong. (D.I. 208-1 at 7)  Movant ignores the fact that the discrepancy in the unit numbers was explained by the evidence that was admitted at trial.  Simply stated, speculation is not enough to demonstrate a reasonable probability that the result of his trial would have been different but for trial counsel's failure to present an unsupported argument.

Accordingly, the Court will deny Claim Four as meritless.

### E.  Claim Five: Trial Counsel Failed to Argue that No Forensic Evidence was Recovered from the Firearms in the Dodge Charger or from the Items in Unit C69

During Movant's trial, the Government's fingerprint expert testified that no fingerprint evidence was obtained from a handgun found in the Dodge Charger (D.I. 96 at 15-16) Additionally, when cross-examining Detective Skinner, trial counsel elicited information that law enforcement did not retrieve any fingerprints from items found in Unit C69 matching Movant, and that law enforcement did not perform any DNA testing on those items.  (D.I. 95 at 205-206, 246)

In Claim Five, Movant  asserts that trial counsel provided ineffective assistance by failing to argue that the absence of any forensic evidence linking Movant to the firearms found in the Dodge Charger or the items found in Unit C69 "negated a finding of constructive possession." (D.I. 208-1 at 7)  Movant's instant contention is belied by the record because trial counsel did, in

fact, make the argument concerning the lack of forensic evidence during closing. For instance,

trial counsel stated:

> You have to prove that [Movant] knowingly possessed both the handguns that were found in the trunk of his vehicle and the marijuana that was found in the storage unit.
>
> And they haven't proved that. They have not proved that [Movant] knowingly controlled or exercised control over the stuff that was in his car or the stuff that was in the storage facility.
>
>          *               *               *
>
> [I]t's the government's burden to prove beyond a reasonable doubt that in fact that stuff [in the locker unit] was within his control. That he knew that that stuff was in that locker. He knew that stuff was in the vehicle that was found without him driving it.
>
> It wasn't while he was driving the vehicle it was searched. The vehicle was outside of the house that he and his mother lived in, and that is where it was found.
>
> And so there is direct evidence that is lacking in this case.
>
> There is circumstantial evidence. And the government is asking you to rely upon the circumstantial evidence to find this proof. But is there enough?
>
>          *               *               *
>
>  Importantly, what else is missing?
>
> There is no fingerprint evidence connecting him to the buckets or the coolers or the marijuana or even the handguns. There is no fingerprint evidence that shows, and any single bit of fingerprint evidence would connect him. There isn't any of that there. There is no DNA evidence again that would connect him specifically to the things that were found in the storage locker facility.

(D.I. 96 at 119-122) Accordingly, the Court will deny Claim Five as meritless.

14

### F. Claim Six:  Trial Counsel Failed to Request to Sever Counts or Request a Bifurcated Trial

In Claim Six, Movant contends that that trial counsel was ineffective for failing to request to sever the § 922(g) count, or to request a bifurcated trial as to the § 922(g) count.  He asserts that the "Third Circuit has expressed a preference for severing (or bifurcating) under circumstances where a Defendant's criminal record would not be admissible in a trial on counts without the 922(g) count," and argues that the "admission of [his] criminal history (in this case the fact he was a felon) is presumptively prejudicial."  (D.I. 208-1 at 5-6)

It is true that Third Circuit caselaw supports the proposition that district courts should sever or bifurcate a trial when a felon in possession charge under § 922(g) is joined with other charges, and the prior felony conviction is not otherwise admissible.[5]  In my experience, in this District, when a defendant makes such a motion, the United States does not oppose it, and the Court grants it.  Thus, I assume (but do not decide[6]) that counsel's representation was below an objective standard of reasonableness.  Nevertheless, that does not mean that trial counsel's failure to file a motion to bifurcate or sever the § 922(g) charge amounted to constitutionally ineffective assistance in this case.  The record reveals that the parties and the Court engaged in procedures that minimized the risk of prejudice resulting from the joinder of the § 922(g) charge with the other two counts of the indictment.  First, the Court provided the following limiting jury instructions: (1) the prior conviction was being brought to their attention only because it was relevant to the § 922(g) count (D.I. 96 at 143); (2) the jury was not to speculate as to the nature

---

[5]*See United States v. Joshua*, 976 F.2d 844, 848 (3d Cir. 1992), *abrogated on other ground, Stinson v. United States*, 508 U.S. 36 (1993); *United States v. Busic*, 587 F.2d 577, 585 (3d Cir. 1978).

[6] I cannot think of any reason that would justify not making the motion.  Before I would decide that as a fact, however, I would want to give counsel a chance to explain himself.

15

of the conviction or to consider the prior conviction when deciding if Movant was in knowing possession of the firearm (*id*.); (3) the fact that Movant was previously found guilty of another crime on another occasion does not mean that he committed the crimes alleged in the Indictment (*id*.); and (4) the jury should consider the evidence relating to each count charged in the Indictment separately (*id*. at 138). *See United States v. Williams,* 290 F. App'x 475, 477 (3d Cir. 2008) (noting on direct appeal that the court took "all reasonable steps" to reduce the potential for prejudice in a non-severance/bifurcation case by giving a "very strong instruction on the limited use of the evidence of a defendant's prior convictions."). Juries are presumed to follow instructions,[7] and nothing in the record suggests that the jury ignored the Court's instructions or was unable to compartmentalize the evidence. *See United States v. Walker*, 657 F.3d 160, 170-71 (3d Cir. 2011) (noting that limiting instructions are "persuasive evidence that refusals to sever did not prejudice [a defendant])." And second, the parties stipulated that Movant was convicted of a crime that was punishable by imprisonment for a term exceeding one year, which means the jury did not hear the nature and facts of Movant's prior felony drug convictions. (D.I. 96 at 115-116, 144); *see Old Chief v. United States*, 519 U.S. 172, 191 (1997) (noting in a Rule 403 balancing that a stipulation can dramatically reduce the risk of prejudice to the defendant when a § 922(g) charge is joined with other charges).

    In addition, there was ample evidence of Movant's guilt as to each of the three counts of the indictment. *See United States v. Dolbin*, 457 F. App'x 112, 115 (3d Cir. 2012) (concluding there was no reasonable probability that severance would have resulted in acquittal given ample

---

[7]*See Richardson v. Marsh*, 481 U.S. 200, 206 (1987).

evidence of defendant's guilt); *United States v. Scott*, 266 F. App'x 206, 209 (3d Cir. 2008) (no prejudice from failing to sever counts where evidence was "strong, if not overwhelming.").

On this record, the Court finds Movant cannot demonstrate a reasonable probability that the outcome of his trial would have been different but for trial counsel's failure to file a motion to bifurcate or sever the § 922(g) charge from the drug charges. Accordingly, the Court will deny the instant IATC Claim because it has no legal merit.

### G.  Claim Seven:  Trial Counsel Failed to Challenge Reliability of Canine and Canine Handler and Failed to Request a Hearing to Determine the Reliability of the Canine Sniff Alert

In his final Claim, Movant asserts that trial counsel provided ineffective assistance by failing to challenge the reliability of the canine's handler ("Detective Donaldson") as well as the reliability of the canine ("K9 Ripper") that alerted the police to the presence of drugs at Unit C69.  (D.I. 208-1 at 6)  Movant also contends that, since K9 Ripper's "alert to drugs in C69 contributed largely to the probable cause offered in support of a search warrant for the unit," trial counsel should have requested a hearing to determine if Detective Donaldson "cued the dog (consciously or not)" because such a hearing "may" have "undermine[d] the case for probable cause."  (*Id.*)

To the extent Movant alleges trial counsel should have challenged the reliability and/or credentialing of K9 Ripper and Detective Donaldson, his claim fails.  The only relevance of the dog sniff was in connection with the search warrant.  Since review of the search warrant is based on the contents of the search warrant and its accompanying affidavit, a request for a hearing to inquire into the expertise of K9 Ripper and Detective Donaldson would have been futile.   And a challenge that the search warrant affidavit was insufficient in describing the expertise would have been meritless.  The record demonstrates there was no reason to challenged the credentials

17

of either the canine or his handler.  The search warrant affidavit supporting the search of Unit

C69 provided the following information concerning K9 Ripper and Detective Donaldson: (1)

Detective Donaldson and K9 Ripper were certified in narcotic detection by the Delaware State

Police ("DSP") K9 Unit in December 2013 after completing 400 hours of training; (2) Detective

Donaldson and K9 Ripper had to complete monthly in-service training, which consisted of 8

hours of training per month conducted by the DSP K9 Unit; (3) as of the date of the warrant,

Detective Donaldson and K9 Ripper had been certified by the National Police Canine

Association in narcotic detection.  (D.I. 30-1, Search Warrant, at ¶ 9

     To the extent Movant asserts that trial counsel was ineffective for not requesting a

hearing to determine if the particular drug sniff alert in this case was unreliable,[8] his contention

that such a hearing *may* have undermined the finding of probable cause is insufficient to

establish prejudice under the second prong of the *Strickland* standard.  First, when the reliability

of a dog sniff alert and, in particular, the canine providing the sniff alert, is questioned, probable

cause is only established if the totality of the circumstances surrounding the alert, including

evidence of the dog's training and certification, "would make a reasonably prudent person think

that a search would reveal contraband or evidence of a crime." *Florida v. Harris*, 568 U.S. 237,

247-48 (2013).  During the suppression hearing, Sgt. Skinner testified that K9 Ripper "was able

to sniff other units" in a loop-like, U shaped fashion, and that K9 Ripper gave a positive alert in

front of Unit C69 by sitting down.  (D.I. 38 at 20-21)  In a gesture of pure speculation, Movant

raises the possibility that Detective Donaldson may have unconsciously cued K9 Ripper.  Yet,

---

[8]In the motion to suppress, trial counsel argued: "Without the inclusion of the canine alerts, the
affidavit of probable cause for search of Unit 69 was insufficient to support a search warrant."
(D.I. 28 at 4)

viewing the totality of the circumstances surrounding K9 Ripper's alert in conjunction with the credentials and experience of both K9 Ripper and Detective Donaldson, a reasonably prudent person would think that a search would reveal evidence of contraband or of a crime.

Second, even without K9 Ripper's positive sniff alert, the Search Warrant application provided sufficient probable cause to support a search warrant. Probable cause to search requires a "fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Probable cause "can be, and often is, inferred by considering the type of crime, the nature of the items sought, the suspect's opportunity for concealment and normal inferences about where a criminal might hide [contraband]." *United States v. Price*, 558 F.3d 270, 282 (3d Cir. 2009). The Search Warrant application in Movant's case included the following five key pieces of information independent of the canine sniff alert: (1) Sgt. Skinner was contacted by an identifiable owner of the self-storage facility who reported that other tenants were complaining about Movant's strange behavior at the facility; (2) Movant frequently visited his 5' x 5' unit three to five times a day, entering it for a brief period before leaving; (3) the owner of the facility used a scope device to look in the unit and reported the only contents as two large coolers, two five gallon buckets, a can of air freshener and a box of plastic Ziploc baggies; (4) Detective Vernon of the Delaware State Police knew from his training and experience that drug dealers often utilize storage facilities to store, package, manufacture, and distribute their illegal drugs to avoid scrutiny on their residence; and (5) detectives conducted a criminal history background check and discovered that Movant had prior drug dealing convictions. (D.I. 30-1 at 4-7) Utilizing the totality of the circumstances, the officers had sufficient articulated facts, grounded in common-sense conclusions, to support probable cause in the affidavit for the Unit Warrant. *See United States v. Ritter*, 416 F.3d 256, 262 (3d Cir. 2005).

19

For all these reasons, the Court concludes that Movant has failed to demonstrate a reasonable probability that the outcome of his suppression hearing (and trial) would have been different but for trial counsel's failure to request a hearing on the reliability of K9 Ripper and Detective Donaldson.

Accordingly, the Court will deny Claim Seven as meritless.

### H. Motions to Compel a Decision

During the pendency of this proceeding, Movant filed two Motions titled "Writ of Mandamus to Compel the Court to Make a Decision." (D.I. 224; D.I. 230)  Movant requests a ruling on his § 2255 Motion because he has 18 months left on supervised release. (D.I. 224 at 1; D.I. 230 at 1)  Given the Court's decision to deny Movant's 2255 Motion, the Court will dismiss the two Motions to Compel as moot.

### III.   EVIDENTIARY HEARING

A district court is not required to hold an evidentiary hearing on a motion filed pursuant to 28 U.S.C. § 2255 if the "motion and the files and records of the case conclusively show" that the movant is not entitled to relief.  28 U.S.C. § 2255; *see also United States v. Booth*, 432 F.3d 542, 545-46 (3d Cir. 2005); *United States v. McCoy*, 410 F.3d 124, 131 (3d Cir. 2005); Rule 8(a), 28 U.S.C. foll. § 2255.  As previously discussed, the record conclusively demonstrates that Movant is not entitled to relief under § 2255.  Therefore, the Court concludes an evidentiary hearing is not warranted.

### IV.   CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2255 motion must also decide whether to issue a certificate of appealability.  *See* 3d Cir. L.A.R. 22.2 (2011).  A certificate of appealability is appropriate only if the movant "has made a substantial showing of the denial of a

constitutional right." 28 U.S.C. § 2253(c)(2). The movant must "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000).

The Court is denying Movant's § 2255 Motion as meritless. The Court is persuaded that reasonable jurists would not find it debatable that the Motion is meritless. Therefore, the Court will not issue a certificate of appealability.

## V.    CONCLUSION

For the reasons discussed, the Court will deny the instant § 2255 Motion without holding an evidentiary hearing or issuing a certificate of appealability. An appropriate Order will be entered.